## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **J.M. Smucker Company,** | **Case No. 5:19cv1116** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Promotion in Motion, Inc.,** | |
| **Defendant** | **MEMORANDUM OPINION AND ORDER** |

Currently pending is Defendant Promotion in Motion's Motion to Dismiss Amended Complaint. (Doc. No. 14.) Plaintiff J.M. Smucker Company filed a Brief in Opposition (Doc. No.17), to which Defendant responded (Doc. No. 18.) For the following reasons, Defendant's Motion is GRANTED IN PART and DENIED IN PART, as follows. Defendant's Motion to Dismiss is denied to the extent it seeks dismissal based on the lack of personal jurisdiction, but is granted on the basis of the anticipatory action exception to the first-to-file rule.

## I.      Procedural History

On May 17, 2019, Plaintiff J.M. Smucker Company (hereinafter "Plaintiff" or "Smucker") filed a Complaint in this Court against Defendant Promotion in Motion (hereinafter "Defendant" or "PIM") seeking a declaratory judgment that its use of the phrase "Fruit is Our 1st Ingredient" did not infringe on any rights of Defendant. (Doc. No. 1.) PIM filed a Motion to Dismiss on June 17, 2019, arguing that Smucker's Complaint should be dismissed for lack of personal jurisdiction and because it constitutes an anticipatory action designed to deprive PIM of its choice of forum. (Doc. No. 9.)

On July 8, 2019, Smucker filed an Amended Complaint, which added an alternative claim for trademark infringement and unfair competition. (Doc. No. 12.) Pursuant to Stipulation of the parties, PIM's Motion to Dismiss was denied as moot. *See* Non-Document Order dated July 19, 2019.

PIM filed a second Motion to Dismiss shortly thereafter, on July 22, 2019. (Doc. No. 14.) Therein, PIM again argues that the instant case should be dismissed for lack of personal jurisdiction and because it constitutes an anticipatory action designed to deprive PIM of its choice of forum. (*Id*.) PIM further asserts that Smucker's trademark infringement claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Smucker filed a Brief in Opposition on August 14, 2019 (Doc. No. 17), to which PIM responded on August 28, 2019 (Doc. No. 18.)

## II.    Factual Allegations

Plaintiff Smucker is a leading manufacturer of consumer food products in North America, including jams, jellies, and preserves. (Doc. No. 1 at ¶¶ 9, 15.) It is an Ohio corporation with its principal place of business in Orrville, Ohio. (*Id.* at ¶ 2.)

Defendant PIM is in the business of developing, manufacturing, marketing and distributing branded confectionary, snack, and candy products. *See* Doc No. 15 (Declaration of Michael Rosenberg (hereinafter "Rosenberg Decl.") at ¶ 2. PIM develops these products under its own brands and also pursuant to license agreements from third party entities. (*Id*.) PIM is a Delaware corporation with its headquarters and principal place of business in Allendale, New Jersey. (*Id.* at ¶¶ 3, 4.)

In 2013, Smucker launched its *Smucker's Natural* Fruit Spread product line. (Doc. No. 1 at ¶ 16.) This product is made from fruit, sugar, fruit pectin, and citric acid, and contains no preservatives or high-fructose corn syrup. (*Id*. at ¶ 17.) Smucker alleges that "it is proud of the fact

that fruit is the first ingredient listed on many flavors of its *Smucker's Natural* Fruit Spread product" and, "from time to time, since at least as early as 2014, it has highlighted that fact in its advertising." (*Id*. at ¶ 19.)

One of PIM's most successful products is Welch's Fruit Snacks, which was introduced in 2001.[1]  (Rosenberg Decl. at ¶ 9.)  Since 2015, PIM has prominently used the tagline "Fruit is our 1st Ingredient!"  at the top of the packaging for Welch's Fruit Snacks.  (*Id*. at ¶ 10.)  PIM further alleges that it "has also made extensive and repeated usage of the PIM Mark in advertising and promoting the Welch's Fruit Snacks product, spending many millions of dollars on such advertisements, promotions, and marketing."  (*Id*.)

PIM became aware that Smucker was using the slogan "Fruit is Our 1st Ingredient" in connection with its jams, jellies, and preserves.  (*Id*. at ¶ 11.)  On April 2, 2019, PIM sent a cease and desist letter to Smucker, in which it stated that Smucker's "prominent use of an identical replica of the PIM Tagline is likely to deceive consumers into believing that there is some affiliation or connection between the parties' respective products."  (Doc. No. 12-1.)  PIM stated that "Smucker's conduct . . . constitutes a violation of the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1114(1) and 1125(a), as well as applicable state law."  (*Id*.)  It demanded that Smucker immediately cease and desist from any further use of designation "Fruit is our 1st Ingredient" and stated  "[u]nless we receive prompt written assurances by no later than April 12, 2019 of Smucker's intention to comply with such demand, we shall have no alternative but to recommend that our client consider further steps designed to protect its valuable trademark rights."  (*Id*.)

---

[1] PIM states that it markets Welch's Fruit Snacks pursuant to an exclusive license from Welch Foods, Inc., A Cooperative, which has granted PIM the exclusive right to use Welch's trademark and variations on that mark in connection with fruit snacks and related snack products. (Rosenberg Decl. at ¶ 9.)

On April 19, 2019, Smucker sent a response letter to PIM in which it disputed PIM's claims of infringement.  (Doc. No. 12-2.)  Specifically, Smucker stated as follows:

> The phrase "fruit is our 1st ingredient" is merely descriptive and incapable of functioning as a mark.  In both cases, the phrase is merely informational, and is, by definition, descriptive because it literally identifies the ingredients of the respective products.  We are within our rights to market our product with a truthful, accurate statement of fact informing consumers about the ingredients of our product.
>
> We do not believe that consumers recognize the Tagline as a trademark, or that it has acquired any secondary meaning, despite the sales and advertising figures referenced in your letter.  The phrase "fruit is our 1st ingredient" does not have any commercial impression beyond its ordinary meaning, and it is unlikely that it would be perceived as a mark.
>
> In light of the foregoing, we believe our respective uses of the phrase "fruit is our 1st ingredient" will be able to peacefully coexist in the marketplace without consumer confusion.

(*Id*.)

PIM responded in a letter dated April 30, 2019.  (Doc. No. 12-3.)  Therein, PIM asserted that Smucker's "conclusion that the phrase Fruit is Our 1st Ingredient! is 'incapable of functioning as a trademark' because it is merely descriptive is inconsistent with basic principles of trademark law."  (*Id*.)  PIM also "categorically reject[ed] [Smucker's] contention that there is not a likelihood of confusion from the parties' use of the identical slogans."  (*Id*.)  It indicated that "[w]hile our client would prefer to resolve this matter without the need for litigation, it is fully prepared to protect its rights if Smucker insists on continuing with this use rather than developing its own original tagline."  (*Id*.)  PIM stated that it was looking forward to Smucker's "prompt response."  (*Id*.)

On May 14, 2019, PIM sent an email to Smucker "to see if we will be receiving any further response from Smucker on this matter."  (Doc. No. 16-4.)  In that email, PIM indicated that "if so, we need to receive it by the end of this week."  (*Id*.)  Smucker responded the next day as follows:

"We are referring this matter to our outside counsel for a second opinion, but due to travel schedules we will need additional time to respond. We will get back to you as soon as possible after the INTA Annual Meeting next week." (Doc. No. 16-5.)

Smucker filed the instant lawsuit in this Court two days later, on May 17, 2019. (Doc. No. 1.) That same day, Smucker's outside counsel sent PIM a letter setting forth various arguments rejecting PIM's infringement claim. (Doc. No. 16-6.) Although it had filed suit that day, the letter from Smucker did not advise PIM that it had done so. (*Id*.) The docket reflects service was not returned executed on PIM until May 30, 2019. (Doc. No. 4.)

Although it had not yet been served, PIM nonetheless quickly learned that Smucker had filed the instant lawsuit. On May 24, 2019, PIM filed its own action against Smucker for trademark infringement in the United States District Court for the District of New Jersey. (Doc. No. 16-7.) *See also Promotion in Motion, Inc. v. The J.M. Smucker Company*, Case No. 2:19-CV-12927 (D.N.J.) On June 11, 2019, Smucker filed a motion in the New Jersey action seeking dismissal based on the first-to-file rule or, alternatively, seeking to transfer the instant action to Ohio. As of the date of this Opinion, that motion is still pending.[2]

## III.    Analysis

---

[2] PIM states that "Smucker's motion in New Jersey has been fully briefed, but both parties have agreed in their papers that it would be appropriate for the New Jersey Court to stay that case pending disposition of PIM's motion to dismiss in Ohio in order to avoid inconsistent rulings." (Doc. No. 14 at p. 5.) The New Jersey District Court has not, as of yet, ruled on the parties' apparent agreement that that action should be stayed. However, federal courts within this Circuit have determined that the court in which the first complaint was filed is the appropriate court to decide whether the first-to-file rule applies. *See e.g., Daimler Chrysler Corp. v. General Motors Corp*., 133 F.Supp.2d 1041, 1042 (N.D. Ohio 2001); *Espey & Associates, Inc. v. Principal Mfg. Corp*., 2009 WL 112781 at * 3 (N.D. Ohio Jan. 15, 2009); *Cavaliers Operating Co, LLC v. Ticketmaster*, 2007 WL 3171584 at * 2 (N.D. Ohio Oct. 30, 2007) (collecting cases). *See also The American Policy Roundtable v. Heritage Alliance*, Case No. 1:19cv535 (N.D. Ohio June 14, 2019) (Doc. No. 31). Thus, the Court finds that, as it is the court in which the first case was filed, it is appropriate for this Court to proceed to resolve PIM's Motion to Dismiss.

Defendant PIM advances three primary arguments in support of its Motion to Dismiss. First, PIM maintains that the instant action should be dismissed as an "anticipatory action" because it was filed solely to deprive Defendant of its choice of forum. (Doc. No. 14 at pp. 6-10.) Second, PIM argues that this Court lacks personal jurisdiction over it with respect to Smucker's Declaratory Judgment claim (Count I) under both Ohio's Long Arm Statute and the Due Process Clause. (*Id*. at pp. 10-17.) Finally, PIM asserts that Smucker's alternative Trademark Infringement claim (Count II) should be dismissed for failure to state a claim upon which relief may be granted. (*Id*. at pp. 17-20.)

The Court will address Defendant's arguments separately, beginning with the threshold issue of personal jurisdiction. *See Steel Co v. Citizens for a Better Env't,* 523 U.S. 83, 93-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (stating that "the requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception"); *Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (explaining that courts must first decide whether personal jurisdiction exists over defendants before proceeding to the merits of the case); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) ("Without personal jurisdiction over an individual, however, a court lacks all jurisdiction to adjudicate that party's rights, whether or not the court has valid subject matter jurisdiction.").

### A.    Personal Jurisdiction

Plaintiff bears the burden of proving personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If a court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v.*

*Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced iron Corp.*, 198 Fed. Appx. 425, 434 (6th Cir. 2006).

When a district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, as is the case here, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). To defeat such a motion, a plaintiff need only make a *prima facie* showing of jurisdiction, which can be met by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). A court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal but may consider a defendant's undisputed factual assertions. *See CompuServe*, 89 F.3d at 1262; *Theunissen*, 935 F.2d at 1459; *NTCH-West Tenn, Inc., v. ZTE Corp.*, 761 Fed. Appx. 485, 488 (6th Cir. Jan. 16, 2019) (citing *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 153 (6th Cir. 1997)). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Id*. *See also Kerry Steel, Inc.,* 106 F.3d at 149.

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service under the [forum] state's long arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird*, 289 F.3d at 871. Because "Ohio's long-arm statute is not coterminous with federal constitutional limits," to establish a *prima facie* case of personal

jurisdiction, a plaintiff must demonstrate that (1) Ohio's long-arm statute has been satisfied and (2) exercising jurisdiction would comport with Due Process. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008)); *Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St.3d 81, 930 N.E.2d 784, 790 (Ohio 2010)).

Here, PIM does not dispute that this Court has personal jurisdiction over it with respect to Smucker's Trademark Infringement claim as set forth in Count II of the Amended Complaint.[3] Rather, PIM limits its jurisdictional challenge to Smucker's Declaratory Judgment claim (Count I). (Doc. No. 14 at p. 10.) In this regard, PIM maintains that specific personal jurisdiction must be independently established with respect to this claim; i.e., Smucker must show that its Declaratory Judgment claim "arises out of" PIM's contacts with Ohio. (*Id*. at p. 11-12.) It argues that, in making this showing, Smucker may not rely on contacts related to its trademark infringement claims (such as PIM's alleged sales and promotional activities in Ohio)[4] but, instead, is limited to only those contacts relating to PIM's enforcement of its trademark rights. (*Id*. at p. 13-15; Doc. No. 18 at p. 11.) Citing numerous decisions from both within and outside this Circuit, PIM argues that this claim must be dismissed because the mere fact that it sent cease-and-desist letters to Smucker in Ohio is not

---

[3] It is well established that the defense of lack of personal jurisdiction can be waived or forfeited. *See HealthSpot, Inc. v. Computerized Screening, Inc*., 66 F.Supp.3d 962, 967 (N.D. Ohio 2014). *See also Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011); *National Feeds, Inc. v. United Pet Foods, Inc*., 118 F.Supp.3d 972, 973 (N.D. Ohio 2015).

[4] In support of its Motion, PIM submits the Declaration of Michael G. Rosenberg, the President and CEO of PIM. (Doc. No. 15.) Therein, Mr. Rosenberg acknowledges that PIM is licensed to do business in Ohio but states that "to the best of our knowledge, only approximately 2% of our annual gross sales derive from products sold in or to Ohio." (*Id.*) He avers that PIM maintains no offices in Ohio; does not own any property or bank accounts in Ohio; and has never brought any lawsuit in Ohio or sought to enforce any right (intellectual property or otherwise) in Ohio. (*Id.*) Finally, Mr. Rosenberg states that PIM has one employee who resides in Ohio, but states that this employee "works out of her home as a matter of her own convenience" and is "not involved in any way with the enforcement of our intellectual property rights." (*Id.*)

sufficient to establish personal jurisdiction under either the Ohio Long Arm Statute or the Due Process Clause as a matter of law. (Doc. No. 14 at p. 13.)

Smucker argues that, in determining whether jurisdiction exists as to the Declaratory Judgment claim, this Court is not limited to considering only those contacts relating to PIM's trademark enforcement activities. (Doc. No. 17 at pp. 10-17.) Rather, it maintains Ohio's Long Arm Statute is satisfied because PIM "transacted business" in Ohio "based upon PIM's massive sales, marketing, and promotional activities targeting Ohio consumers."[5] (*Id*. at p. 11.) Smucker further asserts the exercise of personal jurisdiction over PIM comports with due process because "PIM has purposefully availed itself of acting in Ohio by selling an enormous amount of the goods at issue in Ohio and actively infringing Smucker's trademark here." (*Id*. at p. 12.) Smucker argues that the cases cited by PIM in its Motion are distinguishable because they pertain to patent infringement actions, rather than trademark infringement cases. (*Id*. at p. 16.) Lastly, relying on *SunCoke Energy, Inc. v. Man Ferrostaal Aktiengesellschaft*, 563 F.3d 211 (6th Cir. 2009), Smucker argues that "fairness and substantial justice," along with considerations of judicial economy, support the consideration of both Counts I and II together for purposes of determining personal jurisdiction. (*Id*. at p. 17.)

---

[5] Relying on a Declaration filed by Mr. Rosenberg in a different action, Smucker asserts that there were wholesale sales of Welch's Fruit Snacks in Ohio of around $5.6 million in 2017 alone, and between $60-80 million in retail sales in Ohio over time. (Doc. No. 17 at p. 14, citing Doc. No. 17-2.) Smucker further asserts that "PIM aggressively promotes Welch's Fruit Snacks through many types of media, including national magazines, billboards, social media, and coupons." (*Id*.) Smucker also attaches several proofs of purchase of Welch's Fruit Snacks at various locations around northeast Ohio. (Doc. No. 17-3.)

Even assuming *arguendo* that the requirements of Ohio's Long Arm Statue are met, the Court finds that Smucker has failed to demonstrate that the exercise of specific personal jurisdiction[6] over PIM with respect to Smucker's Declaratory Judgment claim comports with due process. In making this determination, "the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). *See also CompuServe*, 89 F.3d at 1263; *Theunissen*, 935 F.2d at 1459. The Sixth Circuit has established the following three-part test for determining whether specific personal jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc.*, 89 F.3d at 1263. *See also Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

---

[6] As the Sixth Circuit has explained, "there are two kinds of personal jurisdiction within the Due Process inquiry," i.e., general jurisdiction and specific jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012). General jurisdiction requires a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, whereas specific jurisdiction exposes the defendant to suit in the forum state only on claims that "arise out of or relate to" a defendant's contacts with the forum. *Kerry Steel, Inc.*, 106 F.3d at 149. Here, PIM argues that it is not subject to general jurisdiction in Ohio. Smucker does not address or oppose PIM's arguments regarding general jurisdiction and, instead, limits its argument to the issue of specific personal jurisdiction. Thus, the Court will assume, for purposes of the instant Motion, that general jurisdiction does not exist and will limit its analysis to the question of whether Smucker has made a prima facie showing of specific jurisdiction.

As an initial matter, the Court agrees with PIM that Smucker must demonstrate that personal jurisdiction is proper as to each of the claims set forth in the Amended Complaint.  In the Sixth Circuit's split decision in *SunCoke Energy, Inc. v. Man Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 219 (6th Cir. 2009), a majority of justices determined that "personal jurisdiction . . . must be proper as to each claim."[7]  *Id.* at 219 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006); *Remick v. Manfredy*, 238 F.3d 248 (3rd Cir. 2001); *Phillips Exeter Acad. v. Howard Phillips Fund.*, 196 F.3d 284 (1st Cir. 1999)).  As the Fifth Circuit explained in *Seiferth* (a case cited by Justice White in his concurring opinion in *SunCoke Energy*):

> We initially consider what appears to be an issue of first impression for our court: Is specific personal jurisdiction a claim-specific inquiry? We conclude that it is. A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.

> This result flows logically from the distinction between general and specific jurisdiction and is confirmed by the decisions of our sister circuits.[] If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts.

> Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause. Thus, if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim [] We therefore consider separately Seiferth's defective design claim, which does not arise out of the same forum contacts as do his other three claims.

---

[7] While Justice Merritt disagreed, both Justices White and Rogers found that personal jurisdiction must exist for each of the plaintiff's separate claims.  Thus, courts have determined this proposition to be the majority rule in this Circuit. *See e.g., Musto v. Zaro*, 2018 WL 1565604 at * 3 (S.D. Ohio March 30, 2018); *Knowledge Based Solutions, Inc. v. Dijk*, 2017 WL 3913129 at * 3 (E.D. Mich. Sept. 7, 2017); *Bilek v. Burris*, 2010 WL 4629616 at * 4 (E.D. Ky. Nov 8, 2010). *See also Board of Forensic Document Examiners, Inc. v. American Bar Association,* 2017 WL 549031 at * 5 (W.D. Tenn. Feb. 9, 2017); *Abiola v. Beasley*, 2010 WL 5296953 at fn 5 (E.D. Mich. Dec. 20, 2010); *J4 Promotions, Inc. v. Splash Dogs, LLC*, 2009 WL 385611 at * 5 (N.D. Ohio Feb. 13, 2009).

*Seiferth*, 472 F.3d at 274-275 (footnotes omitted) (citing 5B Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure: Civil 3d § 1351, at 299 n.30 (2004) ("[I]f separate claims are pled,

specific personal jurisdiction must independently exist for each claim and the existence of personal

jurisdiction for one claim will not provide the basis for another claim."))  Thus, consistent with the

above authority, the Court finds Smucker must make a *prima facie* demonstration that the exercise of

specific personal jurisdiction over PIM comports with due process particularly with respect to its

Declaratory Judgment claim.

PIM argues that, in making this *prima facie* showing, Smucker is limited to relying on only

those activities engaged in by PIM that relate specifically to the enforcement or the defense of the

validity of the relevant alleged trademark.  In support of this argument, PIM relies principally on

*Avocent Huntsville Corp. v. Aten International Co.*, 552 F.3d 1324 (Fed. Cir. 2008), a patent case in

which the plaintiff sought a declaratory judgment of non-infringement and invalidity of patents held

by the defendant.  Defendant moved to dismiss for lack of personal jurisdiction.  At the outset, the

Federal Circuit distinguished between the analyses called for in a declaratory judgment action versus

a suit for infringement:

> In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is
> that some act of making, using, offering to sell, selling, or importing products or
> services by the defendant constitutes an infringement of the presumptively valid patent
> named in suit. Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is
> relatively easily discerned from the nature and extent of the commercialization of the
> accused products or services by the defendant in the forum. In such litigation, the claim
> both arises out of and relates to the defendant's alleged manufacturing, using, or
> selling of the claimed invention. But in the context of an action for declaratory
> judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the
> defendant, and the claim asserted by the plaintiff relates to the wrongful restraint by
> the patentee on the free exploitation of non-infringing goods [through such means as]
> the threat of an infringement suit. **Thus, the nature of the claim in a declaratory**
> **judgment action is to clear the air of infringement charges. Such a claim neither**
> **directly arises out of nor relates to the making, using, offering to sell, selling, or**

**importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities**.

*Avocent Huntsville*, 552 F.3d at 1332-33 (emphasis added) (internal quotation marks, citations, alterations, and footnote omitted).

The court next observed that "[i]n many patent declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an 'infringement letter.'" *Id* at 1333. Under prior Federal Circuit precedent, such cease-and-desist letters "sent to the alleged infringer by themselves do not suffice to create personal jurisdiction." *Id*. Rather, because a patentee should be afforded "sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum," the exercise of personal jurisdiction must rest upon "other activities directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Id*. These additional activities may include, for example, (i) a relationship between the defendant patentee and "an exclusive licensee headquartered or doing business in the forum state," under which both parties are granted "the right to litigate infringement cases" or the patentee is granted "the right to exercise control over the licensee's sales or marketing activities," or (ii) the defendant's initiation of "judicial or extra-judicial patent enforcement within the forum." *Id*. at 1334 (internal quotation marks and citation omitted). More generally, the court emphasized that the "other activities" engaged in by the defendant must "relate to the enforcement or the defense of the validity of the relevant patents." *Id*. In contrast, a defendant's "commercialization activity" or sales of "products covered by its own patents in the forum state" do not support the exercise of specific

personal jurisdiction in an action seeking a declaratory judgment of non-infringement and invalidity of those patents. *Id.*

As Smucker correctly notes, *Avocent Huntsville* addressed a request for declaratory relief concerning non-infringement and invalidity of *patents* while, in the instant case, Smucker seeks a declaration that it has not infringed an alleged *trademark* owned or controlled by PIM. "In a number of cases, however, federal courts have held that the Federal Circuit's reasoning in *Avocent Huntsville* need not be confined to patent litigation, but is equally applicable to suits seeking a declaration of non-infringement of other intellectual property rights such as copyrights or trademarks." *Bridgeport Music, Inc. v. TufAmerica, Inc.*, 2019 WL 3310866 at * 7 (E.D. Mich. Feb. 20, 2019) (citing *Want2Scrap, LLC v. Larsen*, 2018 WL 1762853 at *8 (N.D. Ind. April 9, 2018); *American Intercontinental University, Inc. v. American University*, 2017 WL 3478805 at *3-*4 (N.D. Ill. Aug. 14, 2017); *Ontel Products Corp. v. Mindscope Products*, 220 F. Supp.3d 555, 561-62 (D.N.J. 2016); *Mike's Train House, Inc. v. Metropolitan Transportation Authority*, 2016 WL 6652712 at *4 (D. Md. Nov. 9, 2016); *New Belgium Brewing Co. v. Travis County Brewing Co.*, 2015 WL 2106329 at *7-*8 (D. Colo. May 1, 2015); *United Bully Kennel Club, Inc. v. American Bully Kennel Club, Inc.,* 2011 WL 13228570 at *9-*11 (S.D. Fla. Oct. 5, 2011)).

Here, the Court agrees with PIM that Smucker has not demonstrated that the exercise of specific personal jurisdiction would comport with due process with respect to its Declaratory Judgment claim. As noted above, the relevant inquiry for specific personal jurisdiction is "to what extent has the defendant [] purposefully directed … *enforcement activities* at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Avocent*, 552 F.3d at 1332-1333 (emphasis added). Sales and promotional activities are not relevant

to this inquiry.  *Id.   See also HealthSpot, Inc. v. Computerized Screening, Inc.*, 66 F.Supp.3d 962, 970 (N.D. Ohio 2014).

PIM argues, and the Court agrees, that the only enforcement activities directed by PIM towards Smucker in the instant case consist of the two cease-and-desist letters and one email sent by PIM to Smucker in April and May 2019.  There is no evidence of any kind of licensing or other agreement between PIM and Smucker relating to the alleged trademark at issue, nor is there evidence that PIM engaged in "other activities" relating to the enforcement of its alleged trademark in Ohio, such as the initiation of judicial or extra-judicial enforcement actions within this forum.  Courts have routinely found that the sending of cease and desist letters, standing alone, is insufficient to confer jurisdiction over a declaratory judgment claim.  *See, e.g., HealthSpot, Inc.*, 66 F.Supp.3d at 970; *International Watchman, Inc. v. 81 January, Inc.*, 2017 WL 3783711 at * 3 (N.D. Ohio Aug. 31, 2017).  Accordingly, the Court finds that Smucker has failed to demonstrate that personal jurisdiction exists over PIM with respect to its Declaratory Judgment claim because Smucker has failed to demonstrate purposeful availment under the first prong of *Mohasco*.[8]

That does not end the analysis, however.  As noted above, PIM does not dispute that this Court has personal jurisdiction over it with respect to Smucker's Trademark Infringement claim as set forth in Count II of the Amended Complaint.[9]  In light of the fact that this Court has jurisdiction over that

---

[8] Smucker's reliance on *CompuServe v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) and *Foreign Candy Co., Inc. v. Promotion in Motion*, 953 F.Supp.2d 934 (N.D. Iowa June 20, 2013) is misplaced.  In *CompuServe*, the defendant's contacts with the forum state went well beyond the sending of cease and desist letters, including entering into an Agreement with the plaintiff, an Ohio company, that was governed by Ohio law and then perpetuating the relationship with plaintiff via "repeated communications with its system in Ohio."  *CompuServe*, 89 F.3d at 1264.  *Foreign Candy* is nonbinding on this Court and is distinguishable because it involved application of Iowa's Long Arm Statute and Eighth Circuit law regarding whether the exercise of personal jurisdiction in that case comported with due process.

[9] Smucker's trademark infringement claim asserts causes of action under both the Lanham Act, 15 U.S.C. § 1125 and Ohio common law.  (Doc. No. 12 at ¶ 54.)

claim, Smucker argues that "fairness and substantial justice," along with considerations of judicial economy, support the exercise of personal jurisdiction over the Declaratory Judgment claim. The Court construes Smucker's argument as a request that this Court exercise of pendent personal jurisdiction over Count I of the Amended Complaint.

"Pendent personal jurisdiction is a common law doctrine that recognizes the inherent fairness of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court already has personal jurisdiction with respect to another claim or claims arising out of the same nucleus of operative facts." *J4 Promotions, Inc. v. Splash Dogs, LLC*, 2009 WL 385611 at *21 (N.D. Ohio Feb. 13, 2009). *See also Capitol Specialty Ins. Corp. v. Splash Dogs LLC*, 801 F.Supp.2d 657, 667 (S.D. Ohio July 14, 2011); *Knowledge Based Solutions, Inc. v. Dijk*, 2017 WL 3913129 at * 9 (E.D. Mich. Sept. 7, 2017). "Under those circumstances, it makes little sense to dismiss or transfer such claims because doing so would not relieve the defendant from the obligation to appear and defend against other related claims, and would create inefficiencies by forcing claims arising out of a common nucleus of operative facts to be tried in different jurisdictions." *Capitol Specialty Ins. Corp.*, 801 F.Supp.2d at 667.

While the Sixth Circuit has not explicitly recognized this doctrine, it has been adopted by most Circuit Courts of Appeals, as well as several district courts within this Circuit. *See United States v. Botefuhr*, 309 F.3d 1263, 1272–75 (10th Cir. 2002)(noting that "the majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction, and we see no reason why, in certain situations, the assertion of pendent personal jurisdiction would be inappropriate"); *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180-1181 (9th Cir. 2004); *Robinson Eng'g Co., Ltd. Pension Plan Trust v.*

*George*, 223 F.3d 445, 449–50 (7th Cir.2000). *See also J4 Promotions, Inc.*, 2009 WL 385611 at *21; *Capitol Specialty Ins. Corp.,* 801 F.Supp.2d at 667; *Knowledge Based Solutions, Inc.*, 2017 WL 3913129 at * 9.

In this case, the Court finds that it would be appropriate to exercise pendent personal jurisdiction over Smucker's Declaratory Judgment Claim against PIM. Smucker's Declaratory Judgment and Trademark Infringement claims arise out of a common nucleus of operative facts and involve many of the same legal issues. Moreover, the Court finds that considerations of judicial economy would be best served by the exercise of pendent personal jurisdiction under the circumstances presented. Accordingly, PIM's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

## B. Anticipatory Action Exception to the First-to-File Rule

PIM next argues the instant action should be dismissed "as an anticipatory action designed to deprive PIM of its choice of forum." (Doc. No. 14 at p 6.) While PIM acknowledges that the first filed action is generally afforded priority when parallel actions are brought in different forums, it argues that courts have the discretion to nonetheless dismiss first filed actions where there is evidence of an "improper anticipatory suit motived by forum shopping." (*Id*. at p. 8.) PIM maintains that the instant action is exactly that, arguing that Smucker engaged in "deceptive gamesmanship" when it lulled PIM into inaction by promising a response but then surreptitiously filed its own declaratory judgment action in this Court. (*Id.*)

Smucker asserts that the anticipatory filing exception does not apply for several reasons. First, Smucker maintains that the instant action must be allowed to proceed because Smucker is "being curtailed in its marketing and promotional endeavors relating to its *Smucker's Natural* Fruit Spreads

due to the aggressive threats by PIM." (Doc. No. 17 at p. 4-5.) Second, Smucker maintains that it did not engage in any deceit or misrepresentation when it filed the instant action, arguing "not once did PIM mention that it was going to file a lawsuit against Smucker and PIM presented no indication, whatsoever, that it was ready to file its complaint in the District of New Jersey." (*Id.* at p. 6.) Nonetheless, Smucker goes on to assert that "it was obvious that PIM was not open to negotiations to resolve the parties' dispute" and that "the only resolution acceptable to PIM was for Smucker to cease using the phrase" at issue. (*Id.*) Thus, Smucker claims it "saw no choice but to file for declaratory judgment in this Court to expeditiously resolve this matter." (*Id.* at p. 7.) Finally, Smucker argues that, if the phrase "Fruit is our 1st Ingredient" is a valid trademark, then Smucker has a superior claim to it and is the natural plaintiff in the present dispute. (*Id.* at p. 8.)

The Sixth Circuit has explained that "[t]he first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). This rule provides that, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir.2007) (quoting *Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc.*, 16 Fed. Appx. 433, 437 (6th Cir.2001)). As such, the first-to-file rule "'encourages comity among federal courts of equal rank.'" *Baatz*, 814 F.3d at 789 (quoting *Zide Sport Shop*, 16 Fed. Appx. at 437). "It also conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Baatz*, 814 F.3d at 789 (citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 977 (3d

Cir.1988) and *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir.1985)).

In order for suits filed in different districts to be duplicative, they must involve "nearly identical parties and issues." *Certified Restoration*, 511 F.3d at 551 (quoting *Zide Sport Shop*, 16 Fed.Appx. at 437). "While there is a paucity of Sixth Circuit case law explaining how to apply the first-to-file rule, courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789. If these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of "inequitable conduct, bad faith, anticipatory suits, [or] forum shopping," merit not applying the first-to-file rule in a particular case. *Certified Restoration*, 511 F.3d at 551–52 (quoting *Zide Sport Shop*, 16 Fed. Appx. at 437)).

Here, it is undisputed that the instant action constitutes the "first-filed" action and, therefore, there is a presumption that the first-to-file rule applies. Nonetheless, the Court will conduct its own review of the three factors set forth above to determine if the presumption applies. The Court first considers the chronology of events. "The dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed." *Baatz*, 814 F.3d at 789. Smucker filed the instant lawsuit on May 17, 2019, while PIM filed its suit in New Jersey on May 24, 2019. (Doc. Nos. 1, 16-7.) Thus, the first factor favors application of the first-to-file rule. The second factor is the similarity of the parties involved. *Baatz,* 814 F.3d at 789. The Court finds this factor also favors applying the first-to-file rule as the parties are identical in both the instant case and the New Jersey action. (*Compare* Doc. No. 1 *with* Doc. No. 16-7.)

Finally, the third factor is the similarity of the issues or claims at stake. In weighing this factor, the Court considers whether the issues in both suits "substantially overlap." *Baatz*, 814 F.3d at 791. The Court finds this factor too favors application of the first-to-file rule, as both suits principally seek to determine whether the phrase "Fruit is Our 1st Ingredient" constitutes a valid trademark and, if so, whether or not each party's use of that phrase infringes upon the rights of the other. (*Compare* Doc. No. 1 at 13-14 *with* Doc. No. 16-7 at 9-10.) Therefore, the Court finds that each of the three factors are satisfied.

Having found that the first-to-file rule presumptively applies, the Court must next determine whether any equitable considerations (such as evidence of inequitable conduct, bad faith, anticipatory suits, or forum shopping) merit not applying the first-to-file rule herein. *See Baatz*, 814 F.3d at 789; *Certified Restoration*, 511 F.3d at 551–52; *Zide Sport Shop*, 16 Fed. Appx. at 437). Indeed, "courts have repeatedly warned that the first-to-file rule 'is not a mandate directing wooden application of the rule without regard to extraordinary circumstances." *Baatz*, 814 F.3d at 792. It is within the discretion of the district court to decline to apply the first-to-file rule. *See Baatz*, 814 F.3d at 793; *Zide Sport Shop*, 16 Fed. Appx. at 437.

In particular, courts have noted concerns about application of the first-to-file rule in the context of declaratory judgment actions. As the Sixth Circuit explained in *Certified Restoration Dry Cleaning Network, LLC, supra*:

> "[T]he first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment." *AmSouth Bank*, 386 F.3d at 791 n. 8. As we have previously explained:
>
> > District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing. Factors that weigh against enforcement of the first-to-file rule include extraordinary

> circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.
>
> *Zide Sport Shop*, 16 Fed. Appx. at 437 (internal citations omitted) (emphasis added). "Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." *AmSouth Bank*, 386 F.3d at 791 n. 8 (quoting *UAW v. Dana Corp.*, No. 3:99CV7603, 1999 WL 33237054, at *6 (N.D. Ohio Dec.6, 1999)).

*Certified Restoration Dry Cleaning Network, LLC*, 511 F.3d at 551-552. *See also Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America–UAW v. Dana Corp.*, 1999 WL 33237054 at *4 (N.D. Ohio 1999) (finding that the "misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."); *Catholic Health Partners v. CareLogistics, LLC*, 973 F.Supp.2d 787, 792 (N.D. Ohio 2013) (same).

The Sixth Circuit considers five factors (the "Grand Trunk factors") to determine whether the exercise of Declaratory Judgment Act[10] jurisdiction is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

---

[10] The Declaratory Judgment Act provides, with certain exclusions not applicable here, that: "In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted).
*See also United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019).[11]

Here, the parties do not directly address the above factors, instead focusing their arguments primarily on whether or not Smucker engaged in forum shopping by filing the instant action. However, as courts within this Circuit generally consider the Grand Trunk factors in determining whether to apply the anticipatory action exception to the first-to-file rule in the context of declaratory judgment actions,[12] the Court will consider each of the relevant factors, below.

With regard to the first factor, the Court finds that it is not certain that the instant action would settle the parties' controversy and, thus, no weight is assigned to this factor. In the instant case, Smucker seeks a declaration that its use of the phrase "Fruit is our 1st Ingredient" (1) is not a valid trademark; (2) is not likely to be confused with PIM's use of the same phrase; and (3) does not infringe on any rights of PIM. (Doc. No. 12 at pp. 13-14.) In the alternative, Smucker asserts a claim for "trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, and the common law of Ohio." (*Id.* at ¶ 54.)

It is true that a judgment by this Court would settle the question of whether the phrase at issue constitutes a valid trademark and, if so, whether PIM infringed Smucker's rights to that trademark,

---

[11] Although the above formulation indicates the court should balance the five factors, the Sixth Circuit has never indicated the relative weights of the factors. *See United Specialty Ins. Co.*, 936 F.3d at 396. Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). The Sixth Circuit has noted that, in weighing these factors, "[d]istrict courts must be afforded substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and [the] fitness of the case for resolution, are peculiarly within their grasp.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).

[12] *See, e.g., Catholic Health Partners*, 973 F.supp.2d at 792-796; *Internet Transaction Solutions, Inc. v. Intel Corp.*, 2006 WL 1281654 at * 3-8 (S.D. Ohio May 8, 2006).

under the Lanham Act and Ohio common law. However, the instant action would not resolve the entirety of the controversy between the parties. Specifically, the instant action would not resolve PIM's claims (asserted in the New Jersey action) that *Smucker* infringed its trademark rights and engaged in unfair competition under the Lanham Act and New Jersey common law. (Doc. No. 16-7 at p. 9.) While PIM could assert these claims as counterclaims in the instant action, it has not done so and, therefore, such claims are not before this Court. Under similar circumstances, the Sixth Circuit has found that the first factor "does not weigh heavily in favor of or against allowing" the action to proceed. *AmSouth Bank v. Dale*, 386 F.3d 763,786 (6th Cir. 2004). *See also Internet Transaction Solutions, Inc*., 2006 WL 1281654 at * 3. Thus, on balance, the Court finds that this factor does not weigh heavily in favor of or against allowing the instant action to proceed.

The second factor to consider is whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue. *Grand Trunk*, 746 F.2d at 326. Here, Smucker's declaratory judgment action would arguably serve a useful purpose in clarifying the parties' legal relations, at least with respect to whether the phrase "Fruit is our 1ˢᵗ Ingredient" constitutes a valid trademark. Indeed, without citing this specific factor, Smucker asserts generally that the Court should allow this action to proceed because it needs certainty as to this issue in light of the fact that it "is being curtailed in its marketing and promotional endeavors relating to its Smucker's Natural Fruit Spreads due to the aggressive threats by PIM." (Doc. No. 17 at p. 5.)

The Court understands Smucker's position. However, several courts, including the Sixth Circuit, have noted that the usefulness of a declaratory judgment action is significantly curtailed once a subsequent, coercive suit is filed. *See AmSouth*, 386 F.3d at 788 ("where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real

value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum-a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act."); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc*., 819 F.2d 746, 749 (7th Cir. 1987) (holding that a declaratory judgment "would serve no useful purpose" because the right to a coercive remedy had accrued and defendant had filed a trademark infringement suit four days after the declaratory judgment action was filed).  *See also Internet Transaction Solutions, Inc*., 2006 WL 1281654 at * 4.  Here, PIM has already filed such a coercive suit in the District of New Jersey.  (Doc. No. 16-7.)  Thus, although the Court recognizes that there is some degree of uncertainty facing Smucker which the instant action might be useful in resolving, the Court finds this factor does not weigh heavily in favor of or against allowing the instant action to proceed.

The key issue in this case is the third factor; i.e., whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326.  As one court in this Circuit has noted, "this factor overlaps with many of the factors that the Sixth Circuit has indicated weigh against enforcement of the first-to-file rule;" i.e., inequitable conduct, bad faith, anticipatory suits, and forum shopping.  *Internet Transaction Solutions, Inc*., 2006 WL 1281654 at * 4.  For the following reasons, the Court finds this factor weighs heavily in favor of dismissing the instant action.

As discussed above, PIM first contacted Smucker on April 2, 2019, when it sent a cease and desist letter stating that Smucker's use of the phrase "Fruit is our 1st Ingredient" constituted trademark infringement under federal and state law.  In that letter, PIM demanded that Smucker immediately cease and desist from any further use of the designation "Fruit is our 1st Ingredient" and stated "[u]nless we receive prompt written assurances by no later than April 12, 2019 of Smucker's intention

to comply with such demand, we shall have no alternative but to recommend that our client consider further steps designed to protect its valuable trademark rights." (Doc. No. 12-1.) Smucker responded via letter dated April 19, 2019, in which it denied PIM's claims of trademark infringement. (Doc. No. 12-2.) PIM sent another letter to Smucker on April 30, 2019, reiterating its claims of trademark infringement and noting that "it is fully prepared to protect its rights if Smucker insists on continuing with this use rather than developing its own tagline." (Doc. No. 12-3.) Smucker did not respond.

On May 14, 2019, PIM sent Smucker an email indicating that it needed a response by "the end of this week." (Doc. No. 16-4.) The next day, Smucker responded as follows: "We are referring this matter to our outside counsel for a second opinion, but due to travel schedules we will need additional time to respond. **We will get back to you as soon as possible after the INT Annual Meeting next week."** (Doc. No. 16-5) (emphasis added). Two days later, on May 17, 2019, Smucker filed the instant lawsuit in this Court. (Doc. No. 1.) That same day, Smucker's outside counsel sent PIM a letter setting forth various arguments rejecting PIM's infringement claim but did not advise PIM that it had already filed suit. (Doc. No. 16-6.) The docket reflects service was not returned executed on PIM until May 30, 2019. (Doc. No. 4.)

Faced with similar facts, the Sixth Circuit has found that a district court did not err in dismissing a plaintiff's declaratory judgment action. In *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed. Appx. 433 (6th Cir. 2001), the declaratory judgment plaintiffs received a letter from defendants that accused them of trademark infringement and breach of contract. The letter stated that defendants would pursue a legal remedy if necessary but would be willing to settle. *Id*. at 435. Over the next few months, the parties made various settlement demands and offers. *Id*. On February 25, 1999, defendants sent a letter to plaintiffs' counsel stating that they "would file suit if

[they] did not receive a serious settlement offer within seven days...." *Id.* Plaintiffs then obtained new counsel and, on March 3, 1999, that new counsel requested a twenty-five day extension so that he could review the matter and respond to defendants' previous letter. *Id.* "[I]n the spirit of settlement," defendants granted plaintiffs a "final extension" until March 26, 1999. *Id.* On March 25, 1999, one day before the extension expired, plaintiffs filed an action against the defendants in the Southern District of Ohio seeking trademark cancellation and declaratory relief. *Id.* Rather than serving the defendants, plaintiffs' counsel sent them a letter listing six reasons why his clients possessed no liability. *Id.* The letter was drafted on March 26, 1999, and it did not inform the defendants of the federal action filed against them a day earlier. *Id.*

The Sixth Circuit affirmed the district court's dismissal of the action, explaining as follows:

A finding of bad faith is overwhelmingly supported in the record. The plaintiffs misled the defendants by going along with written correspondence regarding settlement while, in fact, the plaintiffs had already filed but not served an anticipatory federal action. The plaintiffs knew that if a settlement was not reached, the defendants would seek legal recourse. Thus, they filed their federal action on March 25, 1999, the day before a negotiation extension period granted to them by the defendants expired. In a March 26, 1999 letter, plaintiffs' counsel merely listed six reasons that his clients faced no liability—he did not inform defendants that a federal action had been filed against them in Ohio. As the district court stated:

If Plaintiffs' conduct was not mere deceptive gamesmanship, then they would have informed Defendants that they did not intend to make another settlement offer and would prefer to seek a judicial resolution. If it was not gamesmanship, Plaintiffs would not have filed suit in this Court during the extension period they requested for their new counsel. If it was not gamesmanship, they would have informed Defendants in the March 26, 1999 letter that they had filed suit.

The court also found that the "[d]efendants likely would have filed the Kansas action in early March 1999 and not waited until May 1999" had the plaintiffs not requested the extension period.

\*\*\*

26

> Because the plaintiffs filed their complaint in bad faith and engaged in procedural fencing, the district court did not abuse its discretion by dismissing the plaintiffs' action.

*Zide*, 16 Fed. Appx. at 438-439.

The Sixth Circuit's decision in *Zide* supports a finding of "procedural fencing" herein. In its May 15, 2019 email, Smucker lulled PIM into believing that it was interested in further negotiations, stating that it would respond "as soon as possible" after the trade show ended the following week. Instead, Smucker filed the instant lawsuit two days later, on May 17, 2019. Making matters worse, in a letter dated that same day, Smucker listed a number of reasons why it believed PIM's infringement claims had no merit but failed to notify PIM that it had filed suit that same day. Furthermore, contrary to Smucker's argument that PIM gave no indication that it was intending on filing suit, Smucker's own filings demonstrate a driving concern that, if it did not file suit first, PIM would instigate litigation. Indeed, in its Amended Complaint, Smucker admits that its interpretation of PIM's letters "placed it in apprehension of litigation." (Doc. No. 12 at ¶ 43.) Smucker's response to PIM's Motion to Dismiss also demonstrates that it was aware that PIM would seek to file suit in New Jersey if they could not reach a settlement. (Doc. No. 17 at p. 6-7.)

In light of the above, the Court finds that Smucker's declaratory judgment complaint was motivated by improper forum shopping. This factor weighs heavily in favor of dismissing the instant action.

The fourth factor is whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction. *Grand Trunk*, 746 F.2d at 326. Because the New Jersey action is also in federal court, this factor is not relevant and does not weigh against or in favor of either party.

The fifth, and final, factor is whether there is a better or more effective alternative remedy. *Grand Trunk*, 746 F.2d at 326. As noted above, PIM has filed a suit concerning the same controversy in the District of New Jersey. (Doc. No. 16-7.) The Court finds that action places PIM in the appropriate position as the natural plaintiff, particularly in light of the fact that it was PIM's cease and desist letters that sparked the parties' dispute. As the Sixth Circuit has noted, "a coercive action is an inherently more effective litigation vehicle." *AmSouth Bank*, 386 F.3d at 791. The Court thus finds that this factor weighs in favor of dismissal.

In sum, three of the Grand Trunk factors either are not relevant or do not weigh strongly in favor of either party. The remaining two factors, however, weigh strongly in favor of dismissal. Accordingly, and for all the reasons set forth above, the Court declines to exercise jurisdiction over this declaratory judgment action.[13] PIM's Motion to Dismiss on the basis of the anticipatory action exception to the first-to-file rule is, therefore, granted.[14]

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 14) is GRANTED IN PART and DENIED IN PART, as follows. Defendant's Motion is denied to the extent it seeks

---

[13] The Court finds without merit Smucker's argument that the first-to-file rule should nonetheless apply because any defect in its Complaint was cured when it filed its Amended Complaint seeking injunctive relief. (Doc. 17 at 4.) It would be inherently inequitable to allow a party to race to the courthouse with an improper declaratory action, and yet retain that forum by later amending its complaint to include injunctive relief.

[14] Because the Court declines to exercise jurisdiction over the instant declaratory judgment action, it need not reach PIM's argument that Smucker's Trademark Infringement claim fails to state a claim upon which relief may be granted.

dismissal based on the lack of personal jurisdiction, but is granted on the basis of the anticipatory action exception to the first-to-file rule.

**IT IS SO ORDERED.**


_s/Pamela A. Barker_
PAMELA A. BARKER
Date:  November 7, 2019        U. S. DISTRICT JUDGE